UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| TYRESE FIFE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 08 C 2751 |
| | ) | |
| LEE RYKER, Warden, | ) | |
| Lawrence Correctional Center, | ) | The Honorable |
| | ) | Matthew F. Kennelly, |
| Respondent. | ) | Judge Presiding. |

_____

## RESPONDENT'S ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and this Court's May 29, 2008 order,[1] respondent LEE RYKER submits this Answer to the petition for writ of habeas corpus filed in the above-captioned cause pursuant to 28 U.S.C. § 2254(d), and states as follows:

1.  Petitioner Tyrese Fife is incarcerated at the Lawrence Correctional Center in Sumner, Illinois, where he is in the custody of respondent, Lee Ryker. Petitioner's prison identification number is K69994.

---

[1] On April 22, 2008, petitioner filed an identical § 2254 petition in case no. 08 C 2294. On June 11, 2008, this Court found that petition to be duplicative of the instant petition and terminated the case. *See* Order, *Fife v. Ryker*, No. 08 C 2294.

2. Following a bench trial in the Circuit Court of Cook County, petitioner was convicted of first degree murder, armed robbery, and possession of a controlled substance, and was sentenced to concurrent terms of 25 years' imprisonment. *See* Rule 23 Order at 14, *People v. Fife*, No. 1-98-3866 (Ill.App. 2001) (Exhibit A).

3. On direct appeal to the Illinois Appellate Court, First District, petitioner presented two claims:

   a. the trial court erred in failing to suppress petitioner's involuntary statements; and

   b. petitioner did not knowingly waive his *Miranda* rights and his right to a jury trial, due to his low intellectual functioning.

*See* Pet. Br., *People v. Fife*, No. 1-98-3866 (Exhibit B); State Br., *People v. Fife*, No. 1-98-3866 (Exhibit C). On February 14, 2001, the state appellate court affirmed. *See* Exh. A at 21.

4. Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court, presenting the following claims:

   a. petitioner was denied due process when the exact terms of his "simplified *Miranda* warnings" were not documented, thereby depriving the expert witnesses of the actual language of the warnings, which was necessary to determine whether petitioner could understand and waive his *Miranda* rights;

   b. the state appellate court erred in affirming the trial court's denial of petitioner's motion to suppress his statements; and

   c   petitioner did not knowingly waive his right to a jury trial.

*See* PLA, *People v. Fife*, No. 91146 (Ill. 2004) (Exhibit D).  On June 6, 2001, the Illinois Supreme Court denied the PLA.  *See* Order denying PLA, *People v. Fife*, No. 91146 (Ill. 2004) (Exhibit E).

  5. On November 28, 2001, petitioner filed in the Circuit Court of Cook County a pro se petition for postconviction relief, pursuant to the Illinois Post-Conviction Hearing Act (codified at 725 ILCS 5/122-1, *et seq.*).  Postconviction petition, *People v. Fife*, No. 96 CF 03607 (Cook Cty. Cir. Ct.) (Exhibit F).  On September 1, 2005, petitioner's postconviction counsel filed an amended petition, presenting the following claims:

  a. trial counsel was ineffective for failing to introduce a psychological assessment; and

  b. petitioner was denied due process because the State failed to disclose that assessment prior to the suppression hearing.

Amended postconviction petition, *People v. Fife*, No. 96 CF 03607 (Cook Cty. Cir. Ct.) (Exhibit G).  On October 17, 2005, the State filed a motion to dismiss the petition, arguing that petitioner's trial counsel was not ineffective for failing to introduce the assessment because the failure did not prejudice him, and that his due process rights were not violated because the evaluation was "not material to guilt or punishment."  Rule 23 Order at 6, *People v. Fife*, No. 1-05-3397 (Ill.App. 2006) (Exhibit H).  The state trial court granted the State's motion to dismiss, holding that there was no violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that petitioner had failed to prove ineffective assistance of counsel.  Report of Proceedings, October 17, 2005 (Exhibit I).

6. Petitioner appealed to the Illinois Appellate Court, First District, raising two issues:

   a. trial counsel was ineffective for failing to investigate and introduce a psychological assessment that would have revealed that he suffered from a language-based learning disability; and

   b. his right to due process was violated by the State's failure to disclose the psychological assessment.

*See* Pet. Br., *People v. Fife*, No. 1-05-3397 (Exhibit J); State Br., *People v. Fife*, No. 1-05-3397 (Exhibit K); Pet. Reply Br., *People v. Fife*, No. 1-05-3397 (Exhibit L). On June 22, 2007, the state appellate court held that petitioner had not demonstrated that there was a reasonable probability that the trial court would have granted his motion to suppress if defense counsel had introduced the psychological assessment at the suppression hearing. *See* Exh. H at 10. The appellate court further rejected petitioner's *Brady* claim, on the ground that he could not show prejudice. *Id.* at 12.

7. Petitioner filed a PLA in the Illinois Supreme Court, presenting the following claims:

   a. the appellate court erroneously determined that an evidentiary hearing was not required where there were unresolved issues of fact related to whether trial counsel was ineffective for failing to investigate the psychological assessment; and

   b. the appellate court erroneously determined that an evidentiary hearing was not required where there were unresolved issues of fact related to whether the State committed a *Brady* violation.

*See* PLA, *People v. Fife*, No. 105165 (Ill. 2007) (Exhibit M). On November 29, 2007, the Illinois Supreme Court denied the PLA. *See* Order denying PLA, *People v. Fife*, No. 105165 (Ill. 2007) (Exhibit N).

        8.      On April 22, 2008, petitioner filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254(d), raising the following claims:

    a.      trial counsel was ineffective for failing to investigate and find a 1995 psychological assessment; and

    b.      the prosecutor improperly withheld the psychological assessment from petitioner's trial counsel.

        9.      Petitioner has exhausted his state court remedies in that no state court avenues remain available by which he may present the constitutional claims raised in the present federal habeas petition.

        10.      Pursuant to Rule 5 of the Rules Governing Section 2254 Cases, the following state court materials are being manually filed contemporaneously as exhibits to this answer, under separate cover:

    Exhibit A:    Rule 23 Order, *People v. Fife*, No. 1-98-3866 (Ill.App. 2001);

    Exhibit B:    Pet. Br., *People v. Fife*, No. 1-98-3866;

    Exhibit C:    State Br., *People v. Fife*, No. 1-98-3866;

    Exhibit D:    PLA, *People v. Fife*, No. 91146 (Ill. 2004);

    Exhibit E:    Order denying PLA, *People v. Fife*, No. 91146 (Ill. 2004);

    Exhibit F:    Postconviction petition, *People v. Fife*, No. 96 CF 03607 (Cook Cty. Cir. Ct.);

    Exhibit G:    Amended postconviction petition, *People v. Fife*, No. 96 CF 03607 (Cook Cty. Cir. Ct.);

    Exhibit H:    Rule 23 Order, *People v. Fife*, No. 1-05-3397 (Ill.App. 2006);

    Exhibit I:    Report of Proceedings, October 17, 2005;

    Exhibit J:    Pet. Br., *People v. Fife*, No. 1-05-3397;

Exhibit K:   State Br., *People v. Fife*, No. 1-05-3397;

Exhibit L:   Pet. Reply Br., *People v. Fife*, No. 1-05-3397;

Exhibit M:   PLA, *People v. Fife*, No. 105165 (Ill. 2007);

Exhibit N:   Order denying PLA, *People v. Fife*, No. 105165 (Ill. 2007);

Exhibit O:   Common Law Record, *People v. Fife*, No. 96 CR 03607 (Cook Cty. Cir. Ct.);

Exhibit P:   Supplemental Common Law Record, *People v. Fife*, No. 96 CR 03607 (Cook Cty. Cir. Ct.);

Exhibit Q:   Report of Proceedings Vol. I, *People v. Fife*, No. 96 CR 03607 (Cook Cty. Cir. Ct.);

Exhibit R:   Supplemental Report of Proceedings Vol. I, *People v. Fife*, No. 96 CR 03607 (Cook Cty. Cir. Ct.);

Exhibit S:   Supplemental Report of Proceedings Vol. II, *People v. Fife*, No. 96 CR 03607 (Cook Cty. Cir. Ct.);

Exhibit T:   Supplemental Report of Proceedings Vol. III, *People v. Fife*, No. 96 CR 03607 (Cook Cty. Cir. Ct.);

Exhibit U:   Supplemental Report of Proceedings Vol. IV, *People v. Fife*, No. 96 CR 03607 (Cook Cty. Cir. Ct.); and

Exhibit V:   Supplemental Report of Proceedings Vol. V, *People v. Fife*, No. 96 CR 03607 (Cook Cty. Cir. Ct.).

11.   For the reasons set forth below, petitioner is not entitled to federal habeas corpus relief on any of the claims presented, and upon the filing of this Answer, along with the attendant exhibits and any supplemental pleadings permitted by the Court, the petition should be denied without an evidentiary hearing.

## ARGUMENT

I.  **Factual Background**

The following facts are taken from the state appellate court's decision on petitioner's postconviction appeal:[2]

> Within minutes of a fatal shooting, the police arrested defendant, who was then 15 years old, around 4 a.m. on December 21, 1995, in Harvey, Illinois. The following day, defendant provided an inculpatory statement in which he admitted that he had been read his constitutional rights, understood them, and gave this statement voluntarily. Defendant confessed that he was involved in a plan to rob a man of two kilos of cocaine in Harvey on December 21,1995. Defendant set out that night from Milwaukee, Wisconsin, where he lived, with two companions, Andre Childs and a man named Brown. When they arrived in Harvey, a girl named Kim paged a man to deliver the drugs. After parking the car a block away, defendant waited on one side of a house while his two companions waited on the other side. When the man arrived, Childs jumped out, told the man to give up the drugs, and shot him at least four times. Defendant grabbed the man's bag containing cocaine and ran. He heard Brown fire one shot. Defendant cut through an alley and threw the cocaine into a garage. The police arrested him two blocks away.
> Prior to trial, defendant filed a motion to suppress his statement on the basis, in relevant part, that he was not able to understand the *Miranda* warnings because of his low intellectual functioning. At the suppression hearing, numerous witnesses testified, including police officers who had questioned defendant in prior criminal investigations in April 1992 (possession of narcotics), January 1993 (burglary and armed robbery), December 1993 (stolen car), January 1994 (stolen motor vehicle), August 1995 (possession of a controlled substance), and October 1995 (narcotics). Each police officer testified that defendant understood the *Miranda* rights given to him. Both the youth officer who questioned defendant about the present crimes on December 21,

---

[2] The state courts' factual findings are "presumed to be correct" on federal habeas review, and this presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also* 28 U.S.C. § 2254(d)(2); *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Mendiola v. Schomig*, 224 F.3d 589, 592-93 (7th Cir. 2000) (state appellate court's factual findings entitled to same deference afforded state trial court's findings).

7

1995, and the assistant State's Attorney who took defendant's statement testified that defendant understood his rights in the simplified manner in which they were explained.

Three expert witnesses (Drs. Dawna Gutzmann, Michael Rabin, and Philip Pan) opined that defendant was not capable of knowingly waiving his *Miranda* rights. Their testimony revealed that defendant had tested at two different IQ levels, 59 and 71. Their opinions were based on a review of various reports, including psychological assessments, and sessions with defendant.

The trial court denied defendant's motion to suppress, noting that it had watched and listened to defendant at an earlier proceeding on defendant's unsuccessful motion to quash arrest. The trial court found that defendant was able to understand and decide to waive the *Miranda* rights.

Following a bench trial, defendant was convicted of murder, armed robbery, and possession of a controlled substance. *** The court denied defendant's motion for a new trial and stated:

> "This defendant had, as I said before, and will say it again, this defendant had been around the block so many times, it is my opinion that he was malingering. It is my opinion that he was manipulating the system, and it is my opinion after listening to everyone testify with respect to this motion that I have respectfully declined, I have reconsidered it, and the motion to reconsider was denied, the same ruling by the Court, that the statement goes in, there is reliability. This defendant is absolutely capable of waiving those rights. I watched him during the motion to suppress the evidence. I listened to everything."

Exh. H at 1-4.

## II.    Petitioner's Claims

### A.    Ineffective Assistance of Trial Counsel

Petitioner's first claim alleges that trial counsel was ineffective for failing to investigate and locate Dr. Levy's 1995 psychological assessment. *See* Pet. at 5.

8

Petitioner presented this claim to the state appellate court on postconviction appeal, *see* Exh. H, and in his subsequent PLA to the Illinois Supreme Court. *See* Exh. M. The postconviction appellate court, the last state court to address the claim, rejected it on the merits.

> In rejecting petitioner's claim, the state appellate court wrote:
>
> To establish a claim of ineffective assistance of counsel the defendant must show a deficiency in counsel's representation and prejudice resulting from the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 [ ] (1984); *People v. Edwards*, 195 Ill.2d 142, 162 (2001). First, the defendant must establish that counsel's performance was so deficient that it fell below an objective standard of competence under prevailing professional norms. *People v. Easley*, 192 Ill.2d 307, 317 (2000). Second, the defendant must show that, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. *People v. Mahaffey*, 165 Ill.2d 445, 458 (1995), citing *Strickland*, 466 U.S. at 694. This court does not have to reach both prongs of the test if defendant fails to sufficiently establish one. *See Edwards*, 195 Ill.2d at 163, citing *Strickland*, 466 U.S. at 697.
>
> In his *Strickland* challenge, defendant contends that his amended petition "makes a substantial showing that there is a reasonable probability that the outcome of the suppression hearing would [have been] different" if trial counsel introduced Dr. Levy's assessment at the suppression hearing. Defendant argues that without reviewing Dr. Levy's evaluation, the experts formed their opinions on incomplete information, which, in turn, caused the trial court's decision to be based on incomplete information. However, "[e]vidence of defendant's limited intellectual capacity, by itself, does not indicate that a defendant is incapable of waiving his [ ] constitutional rights and making an inculpatory statement. That is only a factor to be considered in the totality of the circumstances under which the statement was made. *Mahaffey*, 165 Ill.2d at 462, citing *People v. Murphy*, 72 Ill.2d 421, 437 (1978). Here, the record reveals that the three testifying experts at defendant's suppression hearing concluded that defendant did not have the ability to knowingly waive his *Miranda* rights when he was first interviewed in December 1995. In spite of this testimony, the court denied defendant's motion to suppress and ruled that defendant knowingly waived his *Miranda*

warnings. The court based its rulings on all of the evidence, noting that it watched and listened to defendant's testimony at an earlier motion to quash arrest, watched him during the motion to suppress hearing, and listened to everything.

Further, the record shows that the trial court believed defendant was malingering and trying to manipulate the system. The trial court is in the best position to determine whether defendant was able to understand his constitutional rights. *Mahaffey*, 165 Ill.2d at 463. In addition, defendant had numerous encounters with the criminal justice system, beginning at age 12. Defendant's criminal history is a relevant factor in determining whether he had the ability to knowingly waive his *Miranda* rights. *See Mahaffey*, 165 Ill.2d at 463. Therefore, we find that defendant has not made a substantial showing that there is a reasonable probability that the court would have granted his motion to suppress if counsel had introduced Dr. Levy's assessment at the suppression hearing. Accordingly, we need not reach defendant's contention that trial counsel's representation fell below an objective standard of reasonableness. *See People v. Eddmonds*, 143 Ill.2d 501, 511-12 (1991).

Nevertheless, defendant asserts that the impact of the June 1995 assessment on the experts' opinions is unknown, and thus, leaves a question of fact which can be resolved by an evidentiary hearing. Defendant relies on *People v. Morris*, 335 Ill.App.3d 70 (2002), *People v. Ruiz*, 132 Ill.2d 1 (1989), *People v. Wiley*, 205 Ill.2d 212 (2001), and *People v. Steidl*, 177 Ill.2d 239 (1997) to support this argument. Defendant's reliance on these cases is flawed because the questions of fact discussed in *Morris*, *Ruiz*, *Wiley*, and *Steidl* concern whether counsel's performance was reasonable under the first prong of the *Strickland* test. However, the putative question of fact here is whether Dr. Levy's assessment would have changed the opinions of the experts or the court. Nonetheless, even if there was a question of fact regarding counsel's performance, we need not determine whether his representation was deficient because defendant did not sufficiently establish the prejudice prong under *Strickland*. *See People v. Griffin*, 178 Ill.2d 65, 78 (1997).

Exh. H at 8-11.

Federal habeas relief on this claim is unavailable because petitioner cannot show that the state court's adjudication of the claim was either contrary to, or an

unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). A judgment is "contrary to" established federal law if the state court applies a rule that contradicts Supreme Court precedent, or reaches a different conclusion on facts that are materially indistinguishable from an applicable Supreme Court case. *Badelle v. Correll*, 452 F.3d 648, 654 (7th Cir. 2006); *Bridges v. Chambers*, 447 F.3d 994, 996-97 (7th Cir. 2006). A state court judgment is an "unreasonable application" of federal law if it identifies the correct governing law, but applies it unreasonably to the facts. *Badelle*, 452 F.3d at 654.

Under the governing *Strickland* standard, petitioner must prove: (1) that his trial counsel's performance fell below an "objective standard of reasonableness," *id.*, 466 U.S. at 688; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. With respect to the prejudice prong of the *Strickland* test, it is not enough to show that counsel erred, or that the error had "some conceivable effect on the outcome." *Strickland*, 466 U.S. at 693. Rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A habeas petitioner claiming an unreasonable application of *Strickland* bears an even heavier burden: "*Strickland* calls for an inquiry into degrees; it is a

11

balancing rather than a bright-line approach . . . This means that only clear error in applying *Strickland's* standard would support a writ of habeas corpus." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997). The *Strickland* standard builds in an element of deference to counsel's strategic choices and section 2254(d)(1) "adds a layer of respect for a state court's application of the legal standard." *Holman*, 126 F.3d at 881. Thus, in the context of a federal habeas petition governed by AEDPA, habeas relief may not be granted on a *Strickland* claim if the state court's disposition of that claim "[was] at least minimally consistent with the facts and circumstances of the case." *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006) (internal quotations, citations omitted).

First, the state appellate court's decision was not contrary to *Strickland*. Because the state appellate court cited and correctly articulated *Strickland's* standard (Exh. H at 8-11), the court's adjudication of petitioner's ineffective assistance claim did not result in a decision that was "contrary to" clearly established federal law. *Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006).

Second, the state appellate court's holding — that petitioner could not demonstrate a reasonable probability that his motion to suppress would have been granted had counsel introduced Dr. Levy's 1995 psychological assessment — was a reasonable application of *Strickland's* prejudice prong.

At the hearing on petitioner's motion to suppress, the state trial court heard testimony from several witnesses, including police officers who had questioned petitioner in prior criminal investigations; each officer testified that petitioner

12

understood the *Miranda* rights given to him on those prior occasions. *See* Exh. A at 9-11. In addition, the youth officer and the Assistant State's Attorney who took petitioner's statement in the instant case testified that he understood the simplified *Miranda* warnings given to him. *Id.* at 2-5. The three expert witnesses opined that petitioner tested at two different IQ levels — 59 and 71 — and based on their evaluations, he was not capable of knowingly waiving his *Miranda* rights. *Id.* at 5-9; Exh. H at 9-10.

Dr. Levy's 1995 psychological assessment reported that petitioner had an IQ of 56, a score that placed him in the mentally deficient range of cognitive functioning. *See* Exh. G, App. A at 4. Dr. Levy concluded that despite this score, petitioner was not mentally retarded, and that petitioner's IQ score underestimated his cognitive potential, which was in the borderline range. *Id.*

Applying *Strickland*, the appellate court reasonably concluded that even if Dr. Levy's assessment had been presented at the suppression hearing, that assessment would not have changed the opinions of the experts or the trial court. The experts had concluded that petitioner did not knowingly waive his *Miranda* rights, and Dr. Levy's assessment would not have changed their opinions, and would have been duplicative of this testimony. The appellate court also considered petitioner's numerous encounters with the criminal justice system and the trial court's determination that — based on its observations of him during the suppression hearing and his testimony at an earlier hearing on an unsuccessful motion to quash arrest — petitioner was malingering and attempting to manipulate

the system. Exh. H at 10-11. Considering the totality of the circumstances, the state appellate court held that petitioner had failed to demonstrate that he had suffered prejudice as a result of counsel's failure to introduce the assessment. *Id.*

The state appellate court reasonably relied on the trial court's conclusions that petitioner was malingering based on the evidence presented at the suppression hearing and its credibility determinations of the witnesses who testified, and this Court may not redetermine the credibility of witnesses whose demeanor has been observed by the state trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *see also Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007) (citing *Marshall*, 459 U.S. at 434); *Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir. 1993). The appellate court thus reasonably concluded that even if Dr. Levy's assessment had been presented at the suppression hearing, there is no reasonable probability that the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694. This holding was at least minimally consistent with the facts and circumstances of the case, *Taylor*, 448 F.3d at 948, and was an answer that was "within the range of defensible positions." *Murrell v. Frank*, 332 F.3d 1102, 1111-12 (7th Cir. 2003). Accordingly, petitioner is not entitled to federal habeas relief on this claim.

### B. *Brady* violation

Petitioner's second claim alleges that the State failed to provide his trial counsel with Dr. Levy's 1995 psychological assessment. *See* Pet. at 5. Respondent construes this claim to allege a violation of *Brady v. Maryland*, 373 U.S. 83 (1983). Petitioner presented this claim on postconviction appeal, *see* Exh. H at 11-13, and in

his subsequent PLA to the Illinois Supreme Court. *See* Exh. M. The state appellate court, the last state court to address the claim, rejected it on the merits. Petitioner is not entitled to federal habeas relief on this claim because the state court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law as established by *Brady*.

First, because the court applied the correct governing legal standard, the court's decision was not "contrary to" *Brady*, which requires the State to disclose material information within its possession or control that tends to negate the guilt of the defendant. To establish a *Brady* violation, the defendant must show the following: (1) that the evidence at issue is favorable to him, either because it is exculpatory or because it is impeaching; (2) that the evidence was suppressed by the State, either willfully or inadvertently; and (3) that the suppression resulted in prejudice. *Strickler v. Greene,* 527 U.S. 263, 280-82 (1999). Prejudice is established by showing that had the favorable evidence had been disclosed, there is a reasonable probability that the result of the proceedings would have been different. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

The state appellate court applied this standard:

> The State has an affirmative duty to disclose any evidence that is favorable to the accused and material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 [ ]. Evidence is material where "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *People v. Simpson*, 204 Ill.2d 536, 555-56 (2001), quoting *United States v. Bagley*, 473 U.S. 667, 682 [ ]. A defendant must show that the favorable evidence could be reasonably taken to put the case in a whole different light so as to undermine confidence in the verdict.

*People v. Harris*, 206 Ill.2d 293, 312 (2002).

Second, the state appellate court's application of the *Brady* standard was not unreasonable. The court rejected the claim on the ground that petitioner could not show prejudice. As the court wrote:

> Here, defendant fails to make a valid claim under *Brady*. Defendant argues that Dr. Levy's assessment was "highly relevant" because it showed that defendant's IQ was 56 before the incident, and the assessment was not provided to the expert witnesses before the suppression hearing. Defendant also advances that Dr. Levy's evaluation would have "reasonably changed the outcome of the proceedings because [it] undermines confidence in the outcome of the suppression hearing." As stated in our analysis under *Strickland*, the record reveals that Dr. Levy's evaluation would not have affected the outcome of the suppression hearing. Therefore, defendant does not satisfy *Brady* where he fails to show that the result of the suppression hearing would have been different if the State had disclosed Dr. Levy's report.

Exh. H at 12.

The court's resolution of this claim was certainly reasonable. As the court noted, Dr. Levy's assessment revealed that petitioner's IQ was 56 before he committed the instant offenses. The effect of this additional psychological assessment on the proceedings would have been minimal considering that three expert witnesses already testified that they did not believe that petitioner could have knowingly waived his *Miranda* rights. The appellate court considered the testimony of these witnesses and noted that, despite the experts' testimony, the trial judge determined — based on his observations of petitioner and petitioner's numerous interactions with the criminal justice system — that petitioner was malingering and trying to manipulate the system. The appellate court properly

16

rejected petitioner's *Brady* claim, concluding that because there was no reasonable probability that Dr. Levy's assessment would have affected the outcome of the suppression hearing, petitioner could not demonstrate prejudice. *See* Exh. H at 12. This determination was not an unreasonable application of *Brady*, and accordingly, petitioner is not entitled to relief on this claim.

## CONCLUSION

This Court should deny the petition for writ of habeas corpus without an evidentiary hearing.

July 24, 2008                                    Respectfully submitted,

                                                 LISA MADIGAN
                                                 Attorney General of Illinois

                        By:    /s/ Sheri L. Wong
                               SHERI L. WONG, BAR # 6291090
                               Assistant Attorney General
                               100 W. Randolph Street, 12th Floor
                               Chicago, IL 60601-3218
                               TELEPHONE: (312) 814-3692
                               FAX: (312) 814-2253
                               EMAIL: swong@atg.state.il.us

## **CERTIFICATE OF SERVICE**

I certify that on July 24, 2008, I electronically filed respondent's **Answer** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, and on the same date, mailed copies of this document via the United States Postal Service to the following non-CM/ECF user:

Tyrese Fife, #K69994
Lawrence Correctional Center
Rural Route 2
Box 31
Sumner, Illinois 62466

   /s/ Sheri L. Wong
SHERI L. WONG, BAR # 6291090
Assistant Attorney General
100 W. Randolph Street, 12th Floor
Chicago, IL 60601-3218
TELEPHONE: (312) 814-3692
FAX: (312) 814-2253
EMAIL: swong@atg.state.il.us