IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America *ex rel.* TYRESE FIFE, | ) ) ) |
| Petitioner, | ) ) |
| vs. | ) Case No. 08 C 2751 ) |
| LEE RYKER, Warden, Lawrence Correctional Center, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 1998, following a bench trial, an Illinois judge convicted Tyrese Fife of first degree murder, armed robbery, and possession of a controlled substance. The trial judge sentenced Fife to three concurrent terms totaling twenty-five years imprisonment. Fife has petitioned the Court for a writ of habeas corpus under 28 U.S.C. § 2254. He alleges that his constitutional rights were violated by the denial of effective assistance of trial counsel and the prosecution's failure to provide evidence in violation of *Brady v. Maryland*. For the following reasons, the Court denies Fife's petition.

### Background

Factual findings by the state court are presumed correct in a federal habeas corpus proceeding unless they are rebutted by clear and convincing evidence. *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2005); 28 U.S.C. § 2254(e)(1).

Because Fife has not rebutted the Illinois Appellate Court's factual findings, the Court adopts the following account from the decision of that court in *People v. Fife*, No. 1-05-3397 (Ill. App. June 22, 2007):

> Within minutes of a fatal shooting, the police arrested defendant, who was then 15 years old, around 4 a.m. on December 21, 1995, in Harvey, Illinois. The following day, defendant provided an inculpatory statement in which he admitted that he had been read his constitutional rights, understood them, and gave this statement voluntarily. Defendant confessed that he was involved in a plan to rob a man of two kilos of cocaine in Harvey on December 21, 1995. Defendant set out that night from Milwaukee, Wisconsin, where he lived, with two companions, Andre Childs and a man named Brown. When they arrived in Harvey, a girl named Kim paged a man to deliver the drugs. After parking the car a block away, defendant waited on one side of a house while his two companions waited on the other side. When the man arrived, Childs jumped out, told the man to give up the drugs, and shot him at least four times. Defendant grabbed the man's bag containing cocaine and ran. He heard Brown fire one shot. Defendant cut through an alley and threw the cocaine into a garage. The police arrested him two blocks away.
>
> Prior to trial, defendant filed a motion to suppress his statement on the basis, in relevant part, that he was not able to understand the *Miranda* warnings because of his low intellectual functioning. At the suppression hearing, numerous witnesses testified, including police officers who had questioned defendant in prior criminal investigations in April 1992 (possession of narcotics), January 1993 (burglary and armed robbery), December 1993 (stolen car), January 1994 (stolen motor vehicle), August 1995 (possession of a controlled substance), and October 1995 (narcotics). Each police officer testified that defendant understood the *Miranda* rights given to him. Both the youth officer who questioned defendant about the present crimes on December 21, 1995, and the assistant State's Attorney who took defendant's statement testified that defendant understood in the simplified manner in which they were explained.
>
> Three expert witnesses (Drs. Dawna Gutzmann, Michael Rabin, and Philip Pan) opined that defendant was not capable of knowingly waiving his *Miranda* rights. Their testimony revealed that defendant had tested at two different IQ levels, 59 and 71. Their opinions were based on a review of various reports, including psychological assessments, and sessions with the defendant.
>
> The trial court denied defendant's motion to suppress, noting that it had watched and listened to defendant at an earlier proceeding on defendant's unsuccessful motion to quash arrest. The trial court found that defendant was able to understand and decide to waive the *Miranda* rights.

> Following a bench trial, defendant was convicted of murder, armed robbery, and possession of a controlled substance. The parties had stipulated that the tested contents of the bag which defendant had taken and thrown into a garage amounted to 1,003 grams of cocaine and the untested remainder weighed 533 grams. The court denied defendant's motion for a new trial and stated:
>
>> This defendant had, as I said before, and I will say it again, this defendant had been around the block so many times, it is my opinion that he was malingering. It is my opinion that he was manipulating the system, and it is my opinion after listening to everyone testify with respect to this motion that I have respectfully declined, I have reconsidered it, and motion to reconsider was denied, the same ruling by the Court, that the statement goes in, there is reliability. This defendant is absolutely capable of waiving those rights. I watched him during the motion to suppress the evidence. I listened to everything.

*Id.*, slip op. at 1-4.

## Discussion

**1. Ineffective assistance of trial counsel**

Fife argues that his trial counsel was ineffective in pursuing the suppression of his inculpatory statements. Specifically, he contends that trial counsel failed to investigate and uncover a court-ordered psychological assessment of Fife made a few months before his arrest for the shooting.

To prevail on his claim of ineffective assistance of counsel, Fife must show a deficiency in counsel's representation and prejudice resulting from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To show prejudice, Fife must demonstrate that "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To the extent Fife's ineffective assistance claims were reviewed on the merits in the state court, Fife "must do more than show that he would have satisfied *Strickland's*

3

test if his claim were being analyzed in the first instance, because under section 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (citations omitted). Fife has not met either of these standards.

At the suppression hearing, the trial court heard testimony from three expert witnesses. Each of them had access to two IQ tests administered to Fife after his arrest, reflecting that his IQ was 59 and 71, respectively. Dr. Philip Pan and Dr. Michael Rabin conceded that it was possible that Fife was malingering on the first test because one could fake a lower score, but not a higher score. Dr. Rabin further opined that a person with an IQ of 71 was capable of understanding *Miranda* warnings. Both of these experts opined, however, that Fife was incapable of understanding and intelligently waiving his *Miranda* rights at the time of his post-arrest statement due to his limited intellectual capacity.

The trial court also heard testimony from an assistant state's attorney and law enforcement officers who testified that they gave and explained *Miranda* warnings to Fife. Each time, these witnesses testified, he appeared to understand the warnings. In denying Fife's motion, the trial court noted that it considered Fife's prior experience with the criminal justice system and *Miranda* warnings, as well as his testimony at the motion to quash arrest hearing.

In June 1995, Dr. Ascher Levy conducted a psychological assessment ordered by the Juvenile Court. Dr. Levy's assessment underlies both of Fife's claims in his habeas corpus petition, as it was not presented to the trial judge in connection with Fife's motion to suppress his statements to the authorities. The purpose of Dr. Levy's evaluation for the Juvenile Court was "to determine whether there [was] sufficient family stability to support" Fife. Ex. G at C000065. Dr. Levy administered an IQ test, which revealed that Fife had an IQ of 56. Dr. Levy concluded that Fife fell within the "Mentally Deficient range of cognitive functioning at below the [first percentile] of his age group." *Id.* at C000068. Nevertheless, Dr. Levy concluded that the results of the tests "appear to underestimate [Fife's] cognitive potential which is at least in the Borderline range." *Id.*

Fife contends that Dr. Levy's pre-arrest evaluation, done before Fife's arrest in the case at issue and not conducted for purposes of a criminal case, proves that he was not malingering as the trial court concluded in denying his motion to suppress. Because trial counsel failed to investigate and uncover the 1995 assessment, Fife contends, the experts who testified at the suppression hearing based their opinions on incomplete information. Furthermore, Fife contends, the trial court would have been unable to conclude that he was playing dumb or manipulating the system had such strong evidence to the contrary been presented.

In its review of Fife's post-conviction petition, the state appellate court concluded that because the 1995 assessment was similar to the expert opinions presented at the suppression hearing and because the trial judge had observed Fife firsthand, there was no reasonable probability that the proceeding would have turned out differently had the

5

1995 assessment by Dr. Levy been introduced.  The Court also noted the trial judge's reliance on Fife's prior encounters with the criminal justice system and his experience in being given *Miranda* warnings in the past.  Based on these factors, the state appellate court found, Fife could not show prejudice under the *Strickland* standard.

The state appellate court correctly identified *Strickland* as providing the applicable standard.  *People v. Fife*, No. 1-05-3397, slip op. at 8 (Ill. App. June 22, 2007).  And this Court's independent research has not revealed any Supreme Court case that contradicts the state appellate court's reasoning.  As a result, this Court's review is limited to whether the state court's ruling "involved an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  "The bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one."  *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003).  To obtain relief, a petitioner must show that the state court's application of *Strickland* was not "within the range of defensible positions."  *Taylor v. Brady*, 448 F.3d 942, 948 (7th Cir. 2006) (internal quotation marks and citations omitted).

It is true that Dr. Levy's 1995 assessment contradicts the trial court's conclusion that Fife was simply playing dumb to manipulate the system.  But the trial judge placed primary reliance upon a significant amount of evidence aside from the expert testimony.  Specifically, the judge relied on the testimony of those present at the interrogation, his own observations of Fife on the witness stand at a prior hearing, and Fife's receipt and apparent understanding of *Miranda* warnings on multiple occasions in the past, to

determine that he was capable of understanding and waiving those rights. The contents of the 1995 assessment essentially duplicated the expert testimony that the trial court did not find persuasive. Under the circumstances, it was not unreasonable for the state appellate court to conclude that the 1995 assessment likely would not have made a difference in the proceeding.

**2.    *Brady v. Maryland***

Fife argues that he was denied due process of law because prosecutors failed to provide defense counsel with the 1995 assessment, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). To establish a *Brady* violation, Fife must demonstrate that: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material to an issue at trial." *Toliver v. McCaughtry*, 539 F.3d 766, 780 (7th Cir. 2008). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995).

The state appellate court concluded that Fife could not succeed on his *Brady* claim for the same reason he could not succeed on his ineffective assistance claim: he could not show that there was a reasonable probability that, had the evidence been produced, the result of the suppression hearing would have been different.

The state appellate court correctly identified the *Brady* standard. *Fife*, slip op. at 11-12. As a result, this Court's review is limited to determining whether the state appellate court's application of the law was reasonable. 28 U.S.C. § 2254(d)(1). The state appellate court, citing its analysis of *Strickland* prejudice, found that Fife could not

7

show that the result of the suppression hearing would have been different had the state disclosed the 1995 assessment. For the reasons previously discussed, this Court cannot conclude that the state appellate court's determination was unreasonable.

**Conclusion**

For the foregoing reasons, the Court denies Fife's petition for habeas corpus [docket no. 1] and directs the Clerk to enter judgment in favor of respondent.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 21, 2009